UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

REPORT AND RECOMMENDATION

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Larry Sinclair, a/k/a Lawrence
W. Sinclair,

                    Plaintiff,

     vs.

Barack Obama, David Axelrod,
and Democratic National
Committee,

                    Defendants.                    Civ. No. 08-360 (JMR/RLE)

     *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

I. Introduction

     This matter came before the undersigned United States Magistrate Judge

pursuant to a general assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon the Amended Application of the Plaintiff Larry Sinclair

("Sinclair") for leave to proceed in forma pauperis ("IFP").  See, Docket No. 3.[1]

Sinclair appears pro se and, in view of the fact that his Complaint has yet to be served,

_____

     [1]The Plaintiff's original IFP Application, see, Docket No. 2, was never addressed
by the Court, because of the filing of his Amended Application.

no appearance has been made by, or on behalf of, the Defendants.  For reasons which follow, we recommend that Sinclair's Amended Application be denied, and that the action be summarily dismissed.

## II.  Factual and Procedural Background

Sinclair is a resident of Duluth, Minnesota, who seeks to sue United States Senator Barack Obama ("Obama"), who is a candidate to be the Democratic Party's nominee for President of the United States.  Sinclair also seeks to sue David Axelrod ("Axelrod") who, we infer from the Complaint, is a political consultant to both Obama, and the Democratic National Committee ("DNC"), and he also names the DNC as a Defendant.

Sinclair alleges that "he personally engaged in sexual activity and personally used illegal drugs in November 1999 with U.S. Senator Barack Obam  [sic] on two separate occasions."  See, Complaint, Docket No. 1, p. 2, ¶4.  Sinclair also alleges that he "attempted to contact defendant Obama in the fall of 2007 to advise defendant Obama" that Obama should publicly acknowledge the alleged sex and drug use incidents.  Id.  Obama assertedly ignored Sinclair's effort to contact him, and therefore, in January of 2008, Sinclair allegedly "contacted numerous news papers and

news networks with this information" -- presumably, the alleged sex and drug use incidents. Id. at ¶4.

Despite Sinclair's purported efforts to contact the media, his allegations against Obama did not receive the publicity that Sinclair intended, by all appearances, to generate. As a consequence, Sinclair created a videotape, in which he personally recited his allegations against Obama, and then posted that videotape on an internet site known as "YouTube." Id. Thereafter, according to Sinclair, he received "repeated threats of violent attacks against [Sinclair's] person via the internet." Id.

Sinclair further alleges that, after posting his videotape on YouTube, he met with a newspaper reporter, who apparently had spoken with Axelrod about Sinclair's allegations concerning Obama. Id. As related in Sinclair's Complaint, Sinclair "was informed that * * * Axelrod advised said reporter they (Obama and Axelrod) were aware of [Sinclair's] Youtube [sic] video and were conducting and [sic] undercover investigation into [Sinclair] and [Sinclair's] associates." Id.

As related in Sinclair's Complaint, the "Defendant Democratic National Committee has engaged in an active effort to slander [Sinclair] on defendants [sic] official web site, allowing false statements to be made against [Sinclair] and has openly encouraged defendants [sic] members to attack [Sinclair]." Id.

- 3 -

Based upon these scant allegations, Sinclair is attempting to sue all three (3) of the named Defendants for allegedly violating his "right to free speech," and "conspir[ing] against the rights of citizens as a whole."  Id.  Sinclair seeks an injunction that would:  1) compel "defendants to cease any investigation and to turn over to this court any fruits from said investigation," 2) compel the Defendants to "cease all acts of intimidation and instruct their staff and supporters to cease with intimidation and threats," and 3) compel "defendant Democratic National Committee to remove all attack statements, smear and slanderous claims made against [Sinclair] on any and all sections of its official website."  Id. at p. 3, ¶5.

## III. Discussion

An IFP Application will be denied, and the action dismissed, when a plaintiff has filed a pleading that fails to state a claim on which relief may be granted.  See, Title 28 U.S.C. §1915(e)(2)(B)(ii);[2] Moore v. Sims, 200 F.3d 1170, 1171 (8th Cir.

---

[2]As here pertinent, Section 1915(e)(2)(B)(ii) provides as follows:

> (2)    Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that --
>
> *    *    *

(continued...)

2000)("Under section 1915(e)(2)(B)(ii), a District Court shall dismiss a complaint filed in forma pauperis 'at any time if * * * the action * * * fails to state a claim on which relief may be granted.'").  Here, we find that, even with the benefit of a liberal construction, see, <u>Nunley v. Department of Justice</u>, 425 F.3d 1132, 1140 (8th Cir. 2005), citing <u>Stone v. Harry</u>, 364 F.3d 912, 914 (8th Cir. 2004), Sinclair's pleading is deficient because it fails to state a legally cognizable cause of action.

To state an actionable claim for relief, a Complaint must allege a set of historical facts which, if proven true, would entitle the complainant to some legal redress against the named defendants, based upon some recognized legal principle or doctrine.  While Federal Courts must "view pro se pleadings liberally, such pleadings may not be merely conclusory:  the complaint **must allege facts**, which if true, state a claim as a matter of law." <u>Martin v. Aubuchon</u>, 623 F.2d 1282, 1286 (8th Cir. 1980) [emphasis added]; see also, <u>Martin v. Sargent</u>, 780 F.2d 1334, 1337 (8th Cir. 1985) ("Although it is to be liberally construed, a <u>pro se</u> complaint must contain specific

---

[2](...continued)

   (B) the action or appeal --

      *  *  *

    (ii) fails to state a claim on which relief           may be granted * * *.

facts supporting its conclusions."). Here, Sinclair has failed to state a cause of action, because the minimal facts, which are alleged in his Complaint, do not state an actionable claim under any cognizable legal theory.

At the outset, we note that the Complaint fails to explicitly identify any legal basis for Sinclair's lawsuit against the Defendants. The Complaint cites Title 42 U.S.C. §1981, but that statute is available only for claims of **racial** discrimination. See, Forbes v. Arkansas Educational Television, 22 F.3d 1423, 1428 (8th Cir. 1994), cert. denied, 513 U.S. 1110 (1995)(the failure to allege racial discrimination bars a Section 1981 claim); Rouse v. Benson, 193 F.3d 936, 943 (8th Cir. 1999)(a Section 1981 claim is properly dismissible where there was no evidence tending to show racial discrimination); Runyon v. McCrary, 427 U.S. 160, 168 (1976); see also, Saint Francis College v. Al-Khazraji, 481 U.S. 604, 609 (1987). There are no allegations in Sinclair's Complaint that so much as intimate that Sinclair is the victim of any racial discrimination. Indeed, Sinclair's race is not mentioned, nor even alluded to, in any aspect of the Complaint. As a result, Sinclair may not sue the Defendants based upon Title 42 U.S.C. §1981.

Sinclair also cites to Title 18 U.S.C. § 241, but that is a **criminal** statute, which affords no basis for a private, civil cause of action by Sinclair against the Defendants.

See, United States v. Wadena, 152 F.3d 831, 846 (8th Cir. 1998), cert. denied, 526 U.S.

1050 (1996)("Courts repeatedly have held that there is no private right of action under

Section 241."), citing Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989)("Only the United

States as prosecutor can bring a complaint under 18 U.S.C. §§241-242"); see also,

McDermott v. Internal Revenue Service, 2001 WL 1771645 at *1 n. 2 (D. Minn.,

March 27, 2001).

      The Complaint also includes an unexplained reference to the First Amendment,

see, Complaint, supra at p. 1, ¶3, and a conclusory allegation that the "[a]ctions of

defendants are in violation of the U.S. Constitution, violate [Sinclair's] right to free

speech, conspire against the rights of citizens as a whole."[3] Id. at p. 2, ¶ 4. With the

aid of an extremely liberal construction, those allegations of the Complaint **might** be

viewed as an attempt to state a claim based upon Bivens v. Six Unknown Named

---

    [3]Of course, Sinclair has no standing to prosecute his alleged claims on behalf of "citizens as a whole." "The requisite elements of Article III standing are well established: A plaintiff must allege a personal injury fairly traceable to the defendant[s]' allegedly unlawful conduct and likely be redressed by the requested relief." Patel v. United States Bureau of Prisons, --- F.3d ---, 2008 WL 281912 at * 7 (8th Cir., February 4, 2008), quoting Hein v. Freedom From Religion Found., Inc., 551 U.S. ---, 127 S.Ct. 2553, 2562 (2007)(internal quotation omitted); see also, American United for Separation of Church and State v. Prison Fellowship Ministries, Inc., 509 F.3d 406, 419 (8th Cir. 2007)(same). As a consequence, we do not further address that aspect of his Complaint.

Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), a decision in which the Supreme Court allowed a private citizen to sue Federal agents, or employees, for violating the citizen's Federal constitutional rights.  See, Williams v. City of Carl Junction, Missouri, 480 F.3d 871, 875 n. 2 (8th Cir. 2007)("In general, 'a Bivens action is the federal analogue to suits brought against state officials under * * * 42 U.S.C. §1983.'"), quoting Hartman v. Moore, 547 U.S. 250, 255 n. 2 (2006).

Under both Section 1983, and Bivens, the plaintiff must show that the defendant was acting under official authority, when he or she engaged in the complained of acts -- i.e., was a State actor for Section 1983 purposes, or a Federal actor under Bivens. See, e.g., Dossett v. First State Bank, 399 F.3d 940, 949 (8th Cir. 2005)("The traditional definition of acting under color of state law requires that the defendant in a §1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"), quoting West v. Atkins, 487 U.S. 42, 49 (1988), quoting, in turn, United States v. Classic, 313 U.S. 299, 326 (1941).  Accordingly, to have a viable claim, Sinclair must show that the Defendants were "acting **under color of federal law** to raise a Bivens claim."  Haley v. Walker, 751 F.2d 284, 285 (8th Cir. 1984)[emphasis added].  "A person acts under color of [federal] law if he 'exercise[s] power "possessed by virtue

of [federal] law and made possible only because the wrongdoer is clothed with the authority of [federal] law."'" Johnson v. Knowles, 113 F.3d 1114, 1117 (9th Cir. 1997), cert. denied, 522 U.S. 996 (1997), quoting West v. Atkins, supra at 49, quoting, in turn, United States v. Classic, 313 U.S. 299, 326 (1941).

There can be no doubt that Obama was a public official, State or Federal, during some of the events alleged in Sinclair's Complaint, "[b]ut even as a public official [Obama's] alleged wrongful actions are not taken under color of state [or Federal] law if they '"are not in any way related to the performance of [his] duties"' as a public official." Id., quoting Dang Vang v. Vang Xiong X. Toyed, 944 F.2d 476, 479 (9th Cir. 1991), quoting, in turn, Murphy v. Chicago Transit Auth., 638 F. Supp. 464, 467 (N.D. Ill. 1986). Simply stated, "all actions of a government official are not, simply by virtue of the official's government employ, accomplished under the color or federal law." Laxalt v. McClatchy, 622 F. Supp. 737, 747 (D. Nev. 1985)(holding that a United States Senator did not act under color of Federal law when he wrote a letter on official Senate stationery demanding the retraction of a newspaper article, as "[t]he mere fact that Laxalt is a United States Senator does not automatically convert this action as occurring under color of federal law.").

Even assuming, as we must under the analysis dictated by Rule 12(b)(6), Federal Rules of Civil Procedure,[4] that all of the facts of Sinclair's Complaint are true, none of the alleged acts of Obama were taken under color of State or Federal law -- that is, were taken by virtue of his authority as a State or Federal public official.  If, as Sinclair alleges, Obama engaged in sexual or drug activities, there is no suggestion, let alone an allegation, that he did so on any authority derived from his status as a State or Federal public official.  Accordingly, Sinclair has "failed to state a claim" against Obama "on which relief may be granted," and his <u>Bivens</u> claim against Obama should be dismissed as a matter of law.  See, <u>Title 28 U.S.C. §1915(e)(2)(B)(ii)</u>.[5]

---

[4]"When analyzing the adequacy of a complaint's allegations under Federal Rule of Civil Procedure 12(b)(6), we accept as true all of the complaint's factual allegations and view them in a light most favorable to the plaintiff[]." <u>Stodghill v. Wellston School Dist.</u>, 512 F.3d 472, 476 (8th Cir. 2008), quoting <u>Burton v. Richmond</u>, 276 F.3d 973, 975 (8th Cir. 2002); <u>Bohan v. Honeywell Intern., Inc.</u>, 366 F.3d 606, 608 (8th Cir. 2004). "However, * * * we are 'free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations.'" <u>Farm Credit Services of America v. American State Bank</u>, 339 F.3d 764, 767 (8th Cir. 2003), quoting <u>Wiles v. Capitol Indem. Corp.</u>, 280 F.3d 868, 870 (8th Cir. 2002). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Stodghill v. Wellston School Dist.</u>, supra at 476, quoting <u>Burton v. Richmond</u>, supra at 975; see also, <u>In re Canadian Import Antitrust Litig.</u>, 470 F.3d 785, 788 (8th Cir. 2006).

[5]Although we can conceive of circumstances under which a national political
(continued...)

Moreover, even if the Defendants were State or Federal actors, Sinclair's Complaint is devoid of any **factual** allegations which demonstrate that their acts violated his rights under the First Amendment. To the contrary, it appears that Sinclair has had an unfettered opportunity to exercise his constitutional right to free speech, and has exercised that right by posting his video on YouTube, and by

---

[5](...continued)
committee, or its officers, could act under State or Federal law, Sinclair has not alleged any such circumstances here. As our Court of Appeals has explained, under somewhat analogous circumstances:

> To succeed in his §1983 claims, Lindstedt had to show the Libertarian Party's actions were taken under color of state law resulting in the deprivation of rights secured by the Constitution or federal law. Brohard v. Lee, 125 F.3d 656, 659 (8th Cir. 1997). We conclude that Lindstedt did not point to any facts showing the Libertarian Party was acting under color of state law when it acted to expel him from his positions within the Libertarian party.

Linstedt v. Missouri Libertarian Party, 160 F.3d 1197, 1198 (8th Cir. 1998), cert. denied, 528 U.S. 850 (1999), citing Johnson v. Knowles, 113 F.3d 1114, 1120 (9th Cir. 1997), 522 U.S. 996 (1997), for the proposition that "county Republican Central Committee was not government actor because nothing tied state to particular decision to expel two members because of their sexual orientation"), and Banchy v. Republican Party, 898 F.2d 1192, 1195 (6th Cir. 1990)("party did not act under color of state law in precluding members from voting in internal election for ward chairman").

The very same may be said, here, as Sinclair has not alleged facts to show that any of the Defendants were government actors at the time of their alleged constitutional wrongdoing. As a result, the Bivens claims against all of the Defendants are legally untenable.

otherwise publicizing his accusations against Obama.  See, <u>Complaint</u>, at p. 2 ¶4 ("Plaintiff then contacted numerous news papers and news networks with this information in January 2008" and, because of no response from the "Obama organization," "plaintiff was forced to release the statements via video posted on youtube [sic].").  Sinclair does not allege any deprivation of his First Amendment rights, at least in any constitutional sense, and he alleges ready access to "the uninhibited marketplace of ideas" to which the First Amendment entitles him.  See, <u>Red Lion Broadcasting Co. v. F.C.C.</u>, 395 U.S. 367, 390 (1969)("It is the purpose of the First Amendment to preserve an uninhibited marketplace of ideas in which truth will ultimately prevail * * *.").  While Sinclair appears to complain that the publication of his allegations has received public criticism, the First Amendment provides no absolute protection from critical public comment.  As a consequence, Sinclair has failed to raise any cognizable deprivation of his First Amendment rights.[6]

---

[6]We have not overlooked the Plaintiff's allegation that an unidentified newspaper reporter stated that Obama and Axelrod "were conducting and [sic] undercover investigation into plaintiff and plaintiffs [sic] associates."  <u>Complaint</u>, p. 2, ¶ 4.  The allegation, however, does not describe any violation of the Plaintiff's First Amendment rights.  The mere fact of an investigation, in and of itself, is not inconsistent with any First Amendment liberties.

Lastly, we have considered Sinclair's brief and conclusory allegation that the "Defendant Democratic National Committee has engaged in an active effort to slander [Sinclair] on defendants [sic] official web site, allowing false statements to be made against [Sinclair] and has openly encouraged defendants [sic] members to attack [Sinclair]." Complaint, at p. 2. ¶4. According to Sinclair's Complaint, the DNC is not alleged to have slandered him, but rather, is alleged to have opened a forum in which purported slander was recorded by unnamed third parties. Id. Again, accepting those allegations as true for these purposes, Sinclair has failed to allege an actionable claim, as his purported slander action is barred by the Communications Decency Act ("CDA"), Title 47 U.S.C. §230.

As a Court in this District recently explained:

> Section 230 provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," §230(c)(1), and that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section," §230(e)(3). Although the Eighth Circuit has yet to address the application of §230, "[t]he majority of federal circuits have interpreted the CDA to establish broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'"

- 13 -

Gregerson v. Vilana Financial, Inc., 2008 WL 451060 at *8 (D. Minn., February 15, 2008), quoting Almeida v. Amazon.com, Inc., 456 F.3d 1316, 1321 (11th Cir. 2006), quoting, in turn, Zeran v. America Online, Inc., 129 F.3d 327, 331 (4th Cir. 1997); see also, Chicago Lawyers' Committee for Civil Rights under the Law, Inc. v. Craigslist, Inc., 461 F. Supp.2d 681, 688, 690 n. 6 (N.D. Ill. 2006)("Near-unanimous case law holds that Section 230(c) affords immunity to [interactive computer services] against suits that seek to hold an [interactive computer service] liable for third-party content," and "[v]irtually all subsequent courts that have construed Section 230(c)(1) have followed Zeran [v. American Online, Inc., supra], and several have concluded that Section 230(c)(1) offers [interactive computer services] a "broad," "robust" immunity.")[citing a wealth of cases].

Here, since Sinclair alleges that the purported slander is the commentary of third persons on the DNC's website, it is plain that the "[DNC], as an operator of a website where users can post comments, is a provider of an interactive computer service." Id. at *9, citing Universal Communications Systems, Inc. v. Lycos, Inc., 478 F.3d 413, 419 (1st Cir. 2007); Carafano v. Metrosplash.com Inc., 339 F.3d 1119, 1123 (9th Cir. 2003); Faegre & Benson, LLP v. Purdy, 367 F. Supp.2d 1238, 1249 (D. Minn. 2005).

"The third-party comments posted on [the DNC's] website are 'information provided by another information content provider,'" as Section 230(f)(3) "defines 'information content provider' as 'any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service.'" Id. "Accordingly, [the DNC] is

- 14 -

not liable for the third-party comments posted on [its] website."[7] Id.; see also, Faegre & Benson, LLP v. Purdy, supra at 1249 ("Defendants, like Purdy, who run web sites on which internet users can post comments are providers of interactive computer services," and thus, "Purdy is immune from defamation or appropriation claims based on content posted by someone else on the bulletin board he hosts.").

The cases holding that website hosts, such as the DNC, are immune from slander suits because of the provisions of the CDA, under the same circumstances as

---

[7]As the Court in Gregerson v. Vilana Financial, Inc., 2008 WL 451060 at *9 n. 3 (D. Minn., February 15, 2008), further noted:

> Section 230 immunity extends even after [the DNC] was made aware of [Sinclair's] objections to the comments posted by third parties.  Universal Commc'n Sys, 478 F.3d at 420 ("It is, by now, well established that notice of the unlawful nature of the information provided is not enough to make it the service provider's own speech * * *.  Section 230 immunity applies even after notice of the potentially unlawful nature of the third-party content.").

Further, Section 230 "precludes courts from entertaining claims that would place a computer service provider in a publisher's role," and therefore, bars "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions -- such as deciding whether to publish, withdraw, postpone, or alter content." Dimeo v. Max, 433 F. Supp.2d 523, 528 (E.D. Pa. 2006), aff'd, 248 Fed.Appx. 280 (3rd Cir. 2007), quoting Green v. America Online, 318 F.3d 465, 471 (3rd Cir. 2003), quoting, in turn, Zeran v. America Online Inc., 129 F.3d 327, 330 (4th Cir. 1997), cert. denied, 524 U.S. 937 (1998).

alleged by Sinclair, are legion.  See, <u>Chicago Lawyers' Committee for Civil Rights</u> <u>under the Law, Inc. v. Craigslist, Inc.</u>, supra at 690 n. 6 (providing a compendium of cases, State and Federal).  Since Sinclair's attempt to sue the DNC for slander is barred by the CDA, and since he has no viable Section 1983 claim against any of the Defendants, his Complaint should be summarily dismissed pursuant to Title 28 U.S.C. §1915(e)(2)(B)(ii), and his amended IFP Application should be denied as moot.

NOW, THEREFORE, It is --

RECOMMENDED:

1.    That the Plaintiff's Amended Application to Proceed <u>In</u> <u>Forma</u> <u>Pauperis</u> [Docket No. 3] be denied.

2.    That this action be summarily dismissed pursuant to Title 28 U.S.C. §1915(e)(2)(B)(ii).

Dated: February 25, 2008          *s/Raymond L. Erickson*
                                       Raymond L. Erickson
                                       CHIEF U.S. MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2, any party may object to this Report and Recommendation by filing

with the Clerk of Court, and by serving upon all parties by no later than **March 13, 2008**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than March 13, 2008**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.